# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RUBICEL CONTRERAS GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 19-cv-1265 |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | Judge Robert M. Dow, Jr. |
| SECURITY; U.S. CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES; KEVIN | ) | |
| K. MCALEENAN, Acting Secretary, | ) | |
| Department of Homeland Security; | ) | |
| L. FRANCIS CISSNA, Director, U.S. | ) | |
| Citizenship & Immigration Services; | ) | |
| DONALD NEUFELD, Associate | ) | |
| Director of Service Center Operations; | ) | |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT; MATTHEW | ) | |
| ALBENCE, Acting Director of ICE; and | ) | |
| RICARDO WONG, ICE Field Office | ) | |
| Director, Chicago Area of | ) | |
| Responsibility, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rubicel Contreras Garcia ("Plaintiff") brings suit against Defendants the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and various officials of those agencies in their official capacities (collectively, "Defendants"). In her complaint, Plaintiff asks the Court to order USCIS to adjudicate her U-visa petition. Currently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim [13]. For the reasons explained below, this motion [13] is granted in part and denied in part. Count I of the complaint is dismissed with prejudice. This case is set for status hearing on January 16, 2020 at 9:00 a.m.

I.  **Background**[1]

   A.  **Statutory and Regulatory Framework**

"In October 2000, Congress created the U-visa through the passage of the Victims of Trafficking and Violence Protection Act of 2000" (the "Act"). *Calderon-Ramirez v. McCament*, 877 F.3d 272, 274 (7th Cir. 2017). "The Act created a new nonimmigrant visa classification that permits immigrants who are victims of serious crimes and who assist law enforcement to apply for and receive a nonimmigrant visa called a U-visa." *Id*. A U-visa "provides legal status to petitioners and qualifying family members to apply for work authorization and remain in the United States." *Id*. To qualify for a U-visa, DHS must determine that: (1) the petitioner "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner has been, is, or is likely to be helpful to government officials regarding the criminal activity; and, (4) the criminal activity at issue occurred in or violated the laws of the United States. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).

There is a statutory cap of 10,000 U-visas per fiscal year. See 8 U.S.C. § 1184(p)(2)(A). Due to the cap, there is a waiting list of petitioners seeking adjudication. See 8 C.F.R. § 214.14(d)(2). "This results in two separate waiting periods and two adjudications for each petitioner—one for placement on the waiting list and one to receive a U-visa." *Calderon-Ramirez*, 877 F.3d at 274. USIC "will grant eligible petitioners and qualifying family members on the waiting list deferred action and work authorization while they wait for final adjudication," but "those who are waiting to be placed on the waiting list are not granted this benefit." *Id*.

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's complaint. See [1]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

**B.      Facts**

Plaintiff is a native and citizen of Mexico who, prior to her recent removal, had been living in the United States continuously since 1999. Plaintiff has been married to a U.S. citizen since 2004 and has three U.S. citizen children. Prior to her removal, Plaintiff was the sole caretaker of her husband, who had been involved in two major accidents.

The complaint acknowledges that Plaintiff had been removed from the United States twice before she began her latest residency. In March 1998, she "entered the United States, but was voluntarily returned to Mexico the same day." [1] at 5. Shortly after, Plaintiff's ex-boyfriend followed her to Mexico, beat and sexually assaulted her, and threatened her with a gun. In August 1999, Plaintiff attempted to enter the United States at the airport using a U.S. birth certificate. Plaintiff was "expeditiously removed the same day." *Id.* Plaintiff reentered the country again as some point in 1999 and remained in the United States until her recent removal. The complaint alleges that all of Plaintiff's entries into the United States "were solely to escape the violence she was facing in Mexico, after being followed by her boyfriend." *Id.*

Plaintiff was also living in the United States, in Illinois, at some point in 1995. That year, she was "subjected to substantial physical and emotional abuse" by an ex-boyfriend. [1] at 5. "Plaintiff cooperated with the Cicero Police Department in the[ir] investigation." *Id.* "[T]he Cicero Chief of Police signed for [Plaintiff] a U visa certification form, Form I-918 Supplement B, a prerequisite to filing a U visa petition." *Id.* at 5-6. "A U visa is intended for immigrant crime victims who cooperate with law enforcement in the investigation or prosecution of such crimes." *Id.* at 2 (citing 8 U.S.C. § 1101(a)(15)(U)).

Around August 29, 2018, Plaintiff filed a U-visa petition based on domestic violence. On September 25, 2018, USCIS informed ICE that Plaintiff's U-visa application established prima

facie eligibility for a U-visa. However, the complaint alleges, ICE never asked USCIS to expedite Plaintiff's petition, and "USCIS only considers requests for expedite[d] adjudication made by ICE." [1] at 6. Instead, on November 9, 2018, "ICE informed Plaintiff's attorney that Plaintiff's I-246, Application for Stay of Deportation or Removal was denied on November 7, 2018—the same day that ICE removed Plaintiff from the United States." *Id*. at 6.

Plaintiff's complaint contains two counts. In Count I, Plaintiff alleges that DHS's failure to grant Plaintiff a stay of removal "violated the Administrative Procedure Act" ("APA") "and as such, DHS has 'unlawfully withheld' agency action in violation of the APA." [1] at 11 (quoting 5 U.S.C. § 706(1)).

In Count II, Plaintiff alleges that USCIS violated the APA by failing to place Plaintiff on the U-visa "waiting list" within a reasonable amount of time. As of the filing of the complaint, Plaintiff's U-visa petition had been pending for over six months. While acknowledging that "[a]ccording to USCIS's published processing times, it currently takes over four years [to] be placed on the waiting list," [1] at 9, Plaintiff alleges that "[s]erious adverse factors exist in [Plaintiff's] case that make USCIS's delay" of nine months "unreasonable as applied to her." *Id*. at 11. Plaintiff alleges that human health and welfare is at stake in this case because Plaintiff "has been separated from her entire family, including her U.S. citizen husband and children, for whom [s]he is the primary caretaker." *Id*. at 12. Plaintiff also alleges that although "there are others awaiting the first phase of adjudication for a U visa," her interested are substantially different because "ICE has removed her from the United States against [its] own policy." *Id*.[2] Plaintiff

---

[2] In particular, Plaintiff relies on a September 24, 2009 memorandum from the Acting Director of ICE concerning stay requests filed by U-visa applicants. [1] at 10 (citing Memorandum, David Venturella, ICE Acting Director to ICE Field Office Directors, Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants, Sept. 24, 2009, *available at* https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf (last accessed Dec. 12, 2019) (hereinafter "2009 ICE Stay Request Memo"). The memo

4

further alleges that the nature of interests at stake is particularly compelling in her case due to "the danger she faces in Mexico compounded with her separation from her entire family." *Id*. Finally, Plaintiff alleges that the "rule of reason" employed by USCIS—adjudicating U-visa petitions in the order they receive them—"is unjustifiable as it pertains to individuals like [Plaintiff] who ha[ve] been removed from the country and separated from [their] famil[ies]." *Id*. Plaintiff "does not seek one of th[e] 10,000 [U] visas" that may be issued per fiscal year, but "is merely asking for USCIS to conduct the first step of adjudication and place her on the waiting list and parole her back into the United States." *Id*. at 13 (citing 8 C.F.R. § 214.14(d)(2)).

Plaintiff requests a declaration that DHS's failure to grant a stay was in violation of ICE policy and 5 U.S.C. § 706(1); a declaration that USCIS has not made a waiting list determination regarding Plaintiff's U-visa within a reasonable time, in violation of 5 U.S.C. § 555(b); and an order requiring USCIS to make a waiting list determination on Plaintiff's petition.

Currently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim [13].

## II. Legal Standard

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their reply brief, Defendants also raise a challenge to the Court's subject matter jurisdiction, which is governed by Rule 12(b)(1). For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court accepts all well-pleaded factual

---

states that "[w]hen adjudicating Stay requests, [Field Office Directors ('FODs')] must comply with the applicable regulation at 8 C.F.R. § 241.6 and the guidance below when assessing whether to grant an alien's application for a Stay of Removal." 2009 ICE Stay Request Memo, at p. 2. Among other things, "[t]he FOD should favorably view an alien's request for a Stay of Removal if USCIS has determined that the alien has established *prima facie* eligibility for a U-visa." *Id*. "If the FOD finds that serious adverse factors exist and is inclined to deny the Stay request despite the USCIS *prima facie* eligibility finding, the FOD must provide a summary of the case to [Office of Detention and Removal Operations ('DRO')] headquarters for further review." *Id*. at p. 3.

allegations as true and construes all reasonable inferences in the plaintiff's favor. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiff bears the burden of establishing that the elements necessary for jurisdiction have been met. *Scanlan*, 669 F.3d at 841–42. "In ruling on a 12(b)(1) motion, the court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014) (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)).

### III. Analysis

#### A. Denial of Stay of Removal

In their motion to dismiss Count I of Plaintiff's complaint, Defendants argue that (1) the 2009 ICE Stay Request Memo does not impose a duty on DHS to grant a stay while an application for a U-visa is pending; and (2) even if the memo did impose such a duty, DHS complied with its provisions when it denied Plaintiff's stay on the basis of her previous immigration fraud. In their reply memorandum, Defendants also raise a third argument: that this Court lacks subject matter jurisdiction over Plaintiff's challenge to Defendants' denial of her stay request.[3]

The threshold jurisdictional issue must be addressed first. See *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 744 (N.D. Ill. 2016). Although arguments raised for the first time in a reply brief are typically waived, see, e.g., *In re Dealer Management Systems Antitrust Litigation*, 362 F. Supp. 3d 510, 551–52 (N.D. Ill. 2019), a challenge to subject matter jurisdiction may be raised "at any time" and, "[i]f the court determines that it lacks subject matter jurisdiction,"

---

[3] Plaintiff has not requested leave to file a surreply to respond to Defendants' challenge to subject matter jurisdiction.

6

it "must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980) ("jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel").

Having considered Defendants' reply brief and the authorities cited therein, the Court concludes that the Court does not have subject matter over Plaintiff's challenge to DHS's denial of her request for a stay and, therefore, Count I of the complaint must be dismissed. 8 U.S.C. § 1252(g) provides that, apart from specific exceptions that do not apply here, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising out of the decision or action by the Attorney General to … execute removal orders against any alien." Interpreting this provision, the Seventh Circuit has held that "[a] request for a stay of removal 'arises from' the Attorney General's decision … to execute a removal order" and, therefore, is not subject to judicial review. *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787–88 (7th Cir. 2002); see also, e.g., *Kitphothiyan v. Ashcroft*, 74 Fed. Appx. 623, 626, 2003 WL 21956969, at *2 (7th Cir. 2003); *Albarran v. Wong*, 157 F. Supp. 3d 779, 784-85 (N.D. Ill. 2016); *Nino v. Johnson*, 2016 WL 6995563, at *4 (N.D. Ill. Nov. 30, 2016).[4] Plaintiff's framing of her claim as arising under the APA does not change this conclusion, because "the APA does not apply to agency decisions rendered under statutes," like section 1252(g), "that preclude judicial review." *Albarran*, 157 F. Supp. 3d at 786-87 (collecting cases).

For these reasons, the Court grants Defendants' motion to dismiss Count I of the complaint and does not reach the other two grounds for dismissal asserted by Defendants.

---

[4] Although section 1252(g) refers to decisions and actions of the Attorney General, and Plaintiff challenges a decision of DHS, "pursuant to the Homeland Security Act, references to the Attorney General in § 1252 now also include DHS." *Albarran*, 157 F. Supp. 3d at 786.

### B. Delay in Placing Plaintiff on U-visa Waiting List

Defendants move to dismiss Count II of Plaintiff's complaint on the basis that Plaintiff cannot show that DHS's delay in placing her on the U-visa waiting list is unreasonable. According to Defendants, "USCIS processing times indicate that they are currently adjudicating petitions for U nonimmigrant status that were filed in February of 2015, over three years prior to when Plaintiff filed her petition." [11] at 5. Plaintiff responds that "the human health and welfare interests at stake in this case are undeniable and render the delay unreasonable." [15] at 6. Specifically, Plaintiff points out that (1) she "has been removed unlawfully from the United States after her stay was denied"; (2) "prior to her removal, she was a victim of domestic violence in the United States, was helpful to police and suffered harm as a result of the crime"; (3) she is "presently in Mexico and is extremely vulnerable, given that her former abuser—the basis for her U visa—also resides in Mexico"; and (4) she is "separated from her entire family, including her U.S. citizen husband and children." *Id*. at 6-7.

Section 555(b) of the APA states that an agency shall, "within a reasonable time … proceed to conclude a matter presented to it." The APA also provides that a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Although USCIS has "a duty to process" U-visa applications," "the Act and corresponding regulation fail to enumerate a timeframe that USCIS is required to process U-visa petitions for the waiting list." *Calderon-Ramirez*, 877 F.3d at 275. Therefore, the Court "must determine whether [Plaintiff's] wait has been unreasonable." *Id*.

The Court is guided by *Calderon-Ramirez*, which involved similar facts. In that case, the Seventh Circuit affirmed the district court's dismissal of an applicant's petition for writ of mandamus compelling DHS to adjudicate his application for a U-visa. The applicant had been

waiting for two-and-a-half years to be placed on the waiting list. The Seventh Circuit concluded that this delay was not unreasonable, explaining: "USCIS is dealing with an exponentially increasing number of U-Visa applications. Since 2009, the U-Visa backlog has increased from 21,138 to 177,340 pending applications. Prior to August 2016, USCIS had one service center processing applications. In August 2016, USCIS began distributing U-visa petitions to a second service center in response to the increasing backlog. USCIS argues that this change will take time to be felt by petitioners. Due to the circumstances USCIS faces and the agency's recent changes to alleviate the backlog, we do not find [plaintiff's] wait to be unreasonable at this time." *Calderon-Ramirez*, 877 F.3d at 276.

Unlike the plaintiff in *Calderon-Ramirez*, Plaintiff does not contend that the current four-year wait time to be placed on the waiting list is unreasonable in and of itself; instead, she maintains that the delay is unreasonable as applied to the particular facts of her case. See [1] at 11. Unlike Plaintiff here, the plaintiff in *Calderon-Ramirez* did not "set forth any facts that differentiate[d] himself from other petitioners ahead of him for adjudication." *Calderon-Ramirez*, 877 F.3d at 275. Although the government "concede[d] at oral argument that there are instances when the Immigrations and Customs Enforcement can and will expedite a petition," the appellate court concluded that the plaintiff "fail[ed] to present a situation appropriate to warrant such action." *Id*. at 275-76.

In this case, the Court must examine whether the facts alleged in Plaintiff's complaint differentiate her situation in a manner that might plausibly make it appropriate for USCIS to expedite her petition. Both parties contend that the Court should look at the following factors in assessing the reasonableness of USCIS's delay in completing the first step of Plaintiff's U-visa application:

9

(1) Whether the time the agency takes to make a decision is governed by a rule of reason, the context for which may be supplied by an enabling statute that provides a timetable or other indication of the speed with which Congress expects the agency to proceed;

(2) whether human health and welfare are at stake (delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake);

(3) the effect of expediting delayed action on agency activities of a higher or competing priority; and

(4) the nature and extent of the interests prejudiced by the delay.

*Mohamed v. Dorochoff*, 2011 WL 4496228, at *5 (N.D. Ill. Sept. 22, 2011) (quoting *Khananisho v. Chertoff*, 2008 WL 5217296, at *5 (N.D. Ill. Dec.10, 2008)). Although it is a close call, the Court finds it appropriate to allow the parties to further develop their positions on these factors through discovery.

The question is close because in many respects Plaintiff's allegations do little to differentiate her situation from the circumstances facing other U-visa applicants. Plaintiff first contends that the delay in her case is unreasonable because she was unlawfully removed from the United States while her application is pending. However, the facts alleged by Plaintiff do not support her legal conclusion. Pursuant to governing regulations, DHS "may," but is not required to, grant a stay while a U-visa application is pending. 8 U.S.C. § 1227(d). The 2009 ICE Stay Request Memo does not require a stay of deportation, either. Assuming for the sake of argument that the memo creates legally enforceable rights for applicants,[5] it states only that "[i]f USCIS finds that the alien has established *prima facie* eligibility," then "[t]hen FOD *should* view a Stay request favorably, *unless* serious adverse factors exist." 2009 ICE Stay Request Memo, at p. 3

---

[5] This is a questionable proposition, given that the memo explicitly states that it is for "internal Immigration and Customs Enforcement guidance" only and "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." 2009 ICE Stay Request Memo, at p. 3.

(emphasis added). According to the memo, such "serious adverse factors" include "evidence that the alien has engaged in significant immigration fraud." *Id*. at 2.

Defendants maintain that Plaintiff's request for a stay was denied because of evidence that Plaintiff engaged in significant immigration fraud. The documents attached to the complaint show the same. Specifically, Plaintiff attaches a November 8, 2018 letter from ICE Field Office Director Ricardo Wang notifying Plaintiff's attorney that her application for stay of deportation or removal was denied. See [1-1] at 12-13. According to the letter, on November 7, the ICE Enforcement and Removal Operations ("ERO") Headquarters "concurred with the decision to deny" Plaintiff a stay. *Id.* at 12. The letter recounts that in 1999 at O'Hare International Airport, Plaintiff "presented a U.S. social security card and U.S. birth certificate while applying for entry and claimed to be a United States Citizen," but "[t]he documents were determined to be fraudulent" and Plaintiff was removed from the county the same day. *Id*. The letter concludes that "[a]fter consideration of all arguments and supporting documents, ICE ERO has determined that the favorable exercise of discretion is not warranted." *Id*. at 13.

Plaintiff also argues that DHS's delay in putting her on the waiting list was unreasonable because she was the victim of a violent crime in the United States and helped the police. However, the same could be said of any applicant seeking a U-visa and therefore does not differentiate her from other applicants who are ahead of her in the line to get on the waiting list. See *Calderon-Ramirez*, 877 F.3d at 274 (explaining that U-visas were created for "victims of serious crimes and who assist law enforcement"); 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV) (setting out the requirements for obtaining a U-visa).

Plaintiff next maintains that requiring her to remain in Mexico while her U-visa application is processed places her in danger because her ex-boyfriend lives in Mexico. However, this

11

allegation does not appear in the complaint, which governs for purposes of Defendants' motion to dismiss. Even if this fact was alleged in the complaint, it does not plausibly suggest that it was unreasonable for USCIS to require Plaintiff to wait her turn to be placed on the waiting list. According to the complaint, the abuse that forms the basis of Plaintiff's U-Visa application occurred nearly 25 years ago. There is no indication from the complaint that Plaintiff has received any threats or communications from the ex-boyfriend since that time or that the ex-boyfriend resides near where Plaintiff resides in Mexico—a country of more than 127 million people.[6]

Plaintiff's strongest allegation is that she should have received priority in being placed on the waiting list because she is separated from her husband and children, who are all United States citizens residing in the United States and who all depend on her for care. Ultimately, this may not be enough to survive summary judgment. The governing regulations anticipate that petitioners for U-visas may not be present in the United States when their petitions are adjudicated or could be removed from the United States during the pendency of the petitions. See 8 C.F.R. § 214.14(c)(1)(ii) ("The filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order[.]"); 8 C.F.R. § 214.14(c)(5)(i)(B) (providing process for approving petitions when the petitioner is outside the United States). And perhaps most importantly, the regulations proscribe a duty for USCIS to adjudicate U petitions on a first in, first out basis, regardless of where the petitioner resides. 8 C.F.R. § 214.14(d)(2) ("Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority."); compare *Taylor v. Scialabba*, 2017 WL 1344536, at *3 n.3 (N.D. Ill. Apr. 12, 2017) (explaining that "[t]o the extent Plaintiff claims that USCIS has unreasonably delayed

---

[6] See United States Census Bureau, Mexico, Demographic data as of July 1, 2019, *available at* https://www.census.gov/popclock/world/mx#world-footer (last checked Dec. 27, 2019); see also *United States v. United Brotherhood of Carpenters & Joiners of America, Local 169*, 457 F.2d 210, 2014 (7th Cir. 1972) (court may take judicial notice of statistics from the U.S. Bureau of Census Reports).

the processing of his specific U-visa, this claim … fails because Plaintiff has not alleged anything unreasonable about his specific delay in receiving a U-visa" but instead has been "subject to the same procedures and waiting list as any other U-visa applicant"); *Patel v. Rodriguez*, 2015 WL 6083199, at *6 (N.D. Ill. Oct. 13, 2015) (dismissing plaintiffs' claim of unreasonable delay in processing their U-visa applications where "Plaintiffs … fail to allege anything unreasonable about the delay," which is "unsurprising considering the following undisputed facts: (1) the INA caps the number of U-visas that may be issued each year; (2) U-visa applicants on the waiting list are processed according to the date their petitions are filed; and (3) Plaintiffs have remained on the waiting list because there is a long line of applicants ahead of them."). Nonetheless, this allegation is enough for Plaintiff to proceed on Count II. Discovery may provide information about how many other applicants have dependent U.S. citizen family members, whether such applicants are ever given expedited treatment, the extent to which Plaintiff's absence causes a hardship to her family, whether Defendants have been reducing the backlog of applications, etc. That type of information, and any other facts the parties choose to develop, will allow the parties and the Court to better assess whether USCIS's delay in processing Plaintiff's U-visa application is reasonable as a matter of law or subject to determination at trial. After discovery, Defendants certainly may file a motion for summary judgment if they believe this matter is susceptible of resolution at that stage.

**IV.   Conclusion**

For these reasons, Defendants' motion to dismiss [13] is granted in part and denied in part. Count I of the complaint is dismissed with prejudice. This case is set for status hearing on January 16, 2020 at 9:00 a.m.

Dated: December 30, 2019

                                                                 _____
                                                                 Robert M. Dow, Jr.
                                                                 United States District Judge